OPINION OF THE COURT
AMBRO, Circuit Judge.
Appellant Khalil Carter was sentenced to 37 months’ imprisonment for violating his supervised release after he pled guilty to two separate offenses in state court. In imposing its sentence, the District Court looked to Carter’s actual conduct to determine whether he had committed a “crime of violence.” Carter contends that the Court should be limited to the offenses charged, none of which constitutes a “crime of violence.” We conclude there was no error. Even where no crime is actually charged, a district court may consider a defendant’s actual conduct in concluding that he has violated the terms of his supervised release through the commission of a subsequent offense. That particular offense, moreover, may be a “crime of violence.” Here, however, the District Court should have set out Carter’s specific crime of violence. Yet because it provided an alternate basis for Carter’s sentence, any error was harmless, and we affirm the sentence imposed.
1. Background
In May 2008, Appellant Khalil Carter pled guilty to federal charges for conspiracy to use and produce counterfeit credit cards and armed robbery of a pharmacy. These convictions resulted in a United States Sentencing Guidelines (“U.S.S.G.”) range of 121 to 130 months’ imprisonment. Nonetheless, the District Court exercised its discretion to sentence Carter to only 45 months’ imprisonment followed by three years’ supervised release. Carter began supervised release in November 2009.
The United States Probation Office filed a petition for revocation of supervised release in November 2011 based on two incidents. In June 2010, the thirteen-year-old daughter of Carter’s girlfriend complained that Carter had sexually assaulted her. Carter pled guilty in state court to misdemeanors for endangering the welfare of a child and corruption of a minor. 18 Pa. Cons.Stat. Ann. §§ 4304, 6301. He was sentenced to five years’ probation. Second, in October 2011 Carter was arrested for attempting to use stolen credit cards. He pled guilty to access device fraud and was sentenced to 9 to 23 months’ imprisonment.[1] Id. § 4106.
In revoking Carter’s supervised release, the District Court calculated the applicable range of imprisonment. See U.S.S.G. § 7B1.4 (2011).[2] To do so, it needed to determine whether Carter had committed a Grade A or Grade B violation of his release — a significant distinction, as a Grade B violation would result in a Guide *190 lines range of 6 to 12 months’, while a Grade A violation would raise the range to 27 to 38 months’ imprisonment. Both parties agreed that the credit card fraud constituted a Grade B violation of Carter’s supervised release. The Government, however, argued that the June 2010 sexual assault was a more serious Grade A violation because it was a “crime of violence” as a “forcible sex offense,” pointing to evidence of Carter’s actual conduct. Carter, however, testified that he never touched the girl and that he never pled to doing so.
After an initial revocation hearing, the Court held a subsequent hearing in September 2012 to consider the nature of Carter’s plea and the underlying facts of the case. Evidence included the victim’s statement, Carter’s guilty plea transcript, a toxicology report, testimony by the victim’s mother, and an oral statement by Carter. The Court credited the mother’s testimony, which indicated that Carter had taken the girl out to dinner, provided her with alcohol, made inappropriate comments, and touched her genitals while she pretended to be asleep.
On that evidence, the District Court concluded that Carter’s conduct amounted to a forcible sexual offense, classifying it as a “crime of violence” under the Guidelines and a Grade A violation of supervised release. It further explained that it was “outrageous” that Carter gave the underage victim alcohol, and was similarly disappointed that Carter had committed credit card fraud while on supervised release for that same offense. App. at 104. Observing that Carter had abused the “break” he had been given on his initial sentence, the Court sentenced him to 37 months’ imprisonment — four months above the Guidelines range for a Grade A offense — to run consecutively to any state sentence, and explained that it would have imposed the same sentence regardless whether the sexual assault was a Grade A or B violation.
In this appeal, Carter contests the determination that his assault offense was a Grade A violation because he was not charged with or convicted of such an offense.[3] He argues that this determination caused an incorrect Guidelines range and therefore a procedurally unreasonable sentence.
II. Discussion
A. Standard of Review
In scrutinizing a sentence imposed, “we review a district court’s legal conclusions regarding the Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion, and its factual findings for clear error.” United States v. Blackmon, 557 F.3d 113, 118 (3d Cir.2009) (internal citations omitted). Procedural errors are reviewed for abuse of discretion with varying degrees of deference depending on the nature of the particular error asserted. United States v. Wise, 515 F.3d 207, 217 (3d Cir.2008). As such, “if the asserted procedural error is purely factual, our review is highly deferential and we will conclude there has been an abuse of discretion only if the district court’s findings are clearly erroneous.” Id. On the other hand, we give no deference to purely legal errors, such as “when a party claims that the district court misinterpreted the Guidelines.” Id.
Facts relevant to the application of the Guidelines are established by a preponderance of evidence. See United States v. Grier, 475 F.3d 556, 568 (3d Cir.2007) (en banc); see also 18 U.S.C. § 3583(e)(3) (revocation appropriate if the court “finds by a preponderance of the evidence that the defendant violated a condition of supervised release”).
*191 B. Carter’s Sentence
Supervised release requires “that the defendant not commit another Federal, State, or local crime during the term of supervision.” 18 U.S.C. § 3583(d). In revoking a term of supervised release, a district court considers the grade of violation — A, B, or C, with A being the most serious. See U.S.S.G. §§ 7B1.1-1.4. The grade of violation directly affects the Guidelines range for the resulting sentence.
1. Categorizing Violations of Supervised Release
Grade A violations involve “conduct constituting ... a federal, state, or local offense punishable by a term of imprisonment exceeding one year that ... is a crime of violence.” U.S.S.G. § 7Bl.l(a)(l). A “crime of violence” is defined in § 4B1.2 and the corresponding commentary. § 7B1.1 cmt. n. 2. Under § 4B1.2, a crime of violence is “any offense under federal or state law ... that ... has as an element the use, attempted use, or threatened use of physical force against the person of another.” The commentary explains that a “ ‘[c]rime of violence’ includes ... forcible sex offenses.” § 4B1.2 cmt. n. 1. Because both parties agree that the credit card fraud was a Grade B violation, Carter’s Guidelines range ultimately depends on whether the sexual assault should be characterized as a more serious Grade A violation, meaning here whether it was a “crime of violence.” See § 7Bl.l(b) (in the context of multiple violations, “the grade of the violation is determined by the violation having the most serious grade”).
Carter argues that none of the state law charges could support a finding of a forcible sex offense. Specifically, he explains that those charges either: (1) did not have any forcible sexual offense as an element; or (2) where forcible compulsion was one potential element among others, he was necessarily charged with the provision corresponding to a lack of consent rather than a use of force. See, e.g., 18 Pa. Cons.Stat. Ann. § 3125(a)(1), (2) (containing separate provisions for aggravated indecent assault made either “without the complainant’s consent” or “by forcible compulsion”). Carter’s position is that the charges against him are evidence that he did not commit a forcible sexual offense,” but his argument seems to assume that a district court may only consider crimes actually charged when determining the grade of a violation.
We clarify that, because a district court may consider a defendant’s actual conduct in the revocation context, it is not limited to the actual charges or convictions in determining the grade of the violation. As noted above, § 7B1.1 defines a “crime of violence” by reference to § 4B1.2. This internal reference may cause confusion, as § 4B1.2 defines a “crime of violence” for determining whether a defendant is a career offender, and that context generally requires application of the formal categorical approach to determine whether a particular offense is such a crime. United States v. Siegel, 477 F.3d 87, 90 (3d Cir.2007). To determine if a defined offense has occurred under the categorical approach, courts may consider only the statutory language of the offense committed and the fact of conviction, but not the particular facts underlying the conviction.[4] Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 *192 (1990); see also Garcia v. Att’y Gen., 462 F.3d 287, 291 (3d Cir.2006) (“[W]e must look only to the statutory definitions of the prior offenses, and may not consider other evidence concerning the defendant’s prior crimes, including ... the particular facts underlying [a] conviction.” (citation and internal quotation marks omitted)).
In the revocation context, however, the categorical approach does not apply, and district courts may consider a defendant’s actual conduct in determining whether they have broken the law and thus the terms of their supervised release. The Guidelines provide that a violation of supervised release “does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding.” U.S.S.G. § 7B1.1 cmt. n. 1. Instead, “the grade of the violation is to be based on the defendant’s actual conduct,” and “may be charged whether or not the defendant has been the subject of a separate federal, state or local prosecution for such conduct.” Id. (emphases added).
We have previously explained that “there is no requirement of conviction or even indictment” to find that a defendant has violated supervised release by committing a crime. United States v. Poellnitz, 372 F.3d 562, 566 (3d Cir.2004). This approach comports with other courts of appeals that have considered the issue. See United States v. Jones, 696 F.3d 932, 937 (9th Cir.2012) (“[Ujncharged conduct ... can form the basis of a supervised release violation even when the defendant has not been charged or convicted.”); United States v. McNeil, 415 F.3d 273, 278 (2d Cir.2005) (“[T]he grade classification rests on the ‘actual conduct’ underlying the charged violation supporting the revocation of release regardless of whether or how the defendant may be charged in a criminal prosecution for the same underlying conduct.”); United States v. Trotter, 270 F.3d 1150, 1155 (7th Cir.2001) (“Revocation of supervised release ... proceeds on real-offense rather than charge-offense principles.”); United States v. Schwab, 85 F.3d 326, 327 (8th Cir.1996) (per curiam) (same).
Thus, a district court may inquire as to the particulars of a defendant’s actions in determining whether he has violated his release by committing “another Federal, State, or local crime during the term of supervision.” 18 U.S.C. § 3583(d). Because revocation of release can proceed even without charges being filed, the categorical approach is necessarily not applicable in the revocation context. Hence we conclude that the District Court was entitled to rely on the facts presented at the revocation hearing in analyzing the nature of Carter’s violation, and was not limited by the charges filed or offenses of conviction.
2. The District Court’s Findings
In this case, the District Court held that Carter had committed “a forcible sexual offense under the [Guidelines” and thus a “crime of violence” under § 7Bl.l(a)(l). However, it did not name the specific forcible sex offense that it believed Carter had committed. Although the Court was entitled to find such a violation by a preponderance of evidence in considering his actual conduct, it should have indicated the particular “crime of violence” for which Carter was responsible. In classifying violations of supervised release, § 7Bl.l(a) requires that the defendant commit a federal, state, or local of *193 fense. Furthermore, in determining whether an offense is a “crime of violence,” § 4B1.2 requires that it contain an element of force. It is therefore not enough to say that a defendant’s actions were simply violent or forcible without pointing to a crime containing those same elements.
This omission leaves us unable to review the Court’s exercise of discretion. See Primas v. Dist. of Columbia, 719 F.3d 693, 699 (D.C.Cir.2013) (“[T]he district court’s failure to explain itself leaves us ‘unable to review the ... exercise of its discretion.’ ”) (quoting E.E.O.C. v. Nat’l Children’s Ctr., Inc., 98 F.3d 1406, 1410 (D.C.Cir.1996)); United States v. Loy, 191 F.3d 360, 371 (3d Cir.1999) (remanding where the district court failed to explain why it imposed special conditions of supervised release, as required by 18 U.S.C. § 3553(c), and explaining that such reasoning “ensures that appellate review does not ‘flounder in the zone of speculation’ ”) (quoting United States v. Edgin, 92 F.3d 1044, 1049 (10th Cir.1996)). We decline to speculate which federal or state offense the Court believed had been committed, and for this reason we cannot determine whether it was appropriately a “crime of violence.”[5]
An error requires correction if it is not harmless. We are satisfied, however, that the error here was harmless because the District Court explained that it would have ordered the same sentence even without finding a “crime of violence.” See, e.g., United States v. Jackson, 549 F.3d 1115 (7th Cir.2008) (holding that any error in the sentence imposed following revocation of release was harmless “[b]ecause the district court made clear that it would have imposed the same prison term upon him regardless of whether his [crime] was classified as a crime of violence or not”).
In evaluating harmlessness, we “decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor.” Williams v. United States, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992); see also United States v. Langford, 516 F.3d 205, 215 (3d Cir.2008) (explaining that harmless error can occur where it is “clear that the error did not affect the district court’s selection of the sentence imposed”). We remain mindful that “when the starting point for the ... analysis is incorrect, the end point, i.e., the resulting sentence, can rarely be shown to be unaffected.” Langford, 516 F.3d at 217. Specifically, an error is not harmless where a district court simply states that it would have imposed the same sentence without pointing to the alternative Guidelines range and explaining its decision to arrive at the specific sentence. United States v. Wright, 642 F.3d 148, 154 n. 6 (3d Cir.2011).
It appears that the Court in our case was aware that Carter’s Guidelines range for a Grade B violation was 6 to 12 months’ imprisonment, while the range for a Grade A violation was 27 to 33 months. App. at 50. Here, the Court exercised its discretion and imposed a sentence of 37 months’ imprisonment as an “appropriate sentence *194 ... [,] whether it was an A violation or a B violation.” Id. at 104. In departing upward from both ranges, the District Court stressed that Carter had committed the same sort of credit card fraud for which he was serving supervised release, had given his underage victim alcohol, and had abused the leniency shown by the Court at his initial sentencing. Id. We cannot conclude this was an abuse of discretion.
III. Conclusion
The categorical approach does not apply when imposing a sentence in revoking a term of supervised release under U.S.S.G. § 7B1.3. A district court may consider a defendant’s actual conduct when determining — by a preponderance of evidence— whether that defendant violated the terms of his release by breaking the law. In doing so, the court must point to a provision of law that has been broken. Though it did not do so explicitly here, we are still able to affirm the sentence imposed based on the District Court’s alternative sentence calculation and explanation of the reasons it found 37 months’ imprisonment an appropriate sentence for Carter’s supervised release violations..

. This second conviction was deemed a violation of Carter’s probation in a prior case in Delaware County, Pennsylvania, for which Carter was also sentenced to one to two years’ imprisonment to run consecutively.

. Unless otherwise noted, all references to the United States Sentencing Commission Guidelines Manual are to the version effective November 1, 2011. This was the version in effect for Carter's violation hearing at which he was sentenced. See U.S.S.G. § 1B1.11(a).

. The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

. Similarly, a court may use what is termed a modified categorical approach solely "when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant’s conviction." Descamps v. United States, 570 U.S. -, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013). This "permits sentencing courts to consult a limited class of documents, such as indictments and jury in *192 structions, to determine which alternative formed the basis of the defendant’s prior conviction.” Id. at 2281. The modified categorical approach nonetheless "retains the categorical approach’s central feature: a focus on tire elements, rather than the facts, of a crime.” Id. at 2285.

. As such, we express no opinion on whether Carter’s actions constituted a forcible sex offense qualifying as a crime of violence. We have previously held — in regard to § 2L 1.2 of the Guidelines — "that the Sentencing Commission did not mean to limit ‘forcible sexual offenses' to those involving the application of direct physical force, as opposed to some other type of compulsion.” United States v. Re-moi, 404 F.3d 789, 794 (3d Cir.2005). Though we need not decide the issue, we are skeptical that Remoi applies in the § 4B1.2(a)(l) context, which, unlike § 2L1.2, specifically requires "as an element the use, attempted use, or threatened use of physical force.” Compare § 4B1.2(a)(l), with § 2L1.2(b)(1)(A). Moreover, in United States v. Siegel, 477 F.3d 87 (3d Cir.2007), we explained that sexual offenses involving “insignificant or minor touching” should not be automatically “shoehorned” into “crimes of violence” under § 4B1.2. Id. at 92.