NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2616
_____

UNITED STATES OF AMERICA

v.

ANTHONY JOHNSON, JR.,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cr-00285-001)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 1, 2019

Before:  RESTREPO, ROTH and FISHER, *Circuit Judges*.

(Filed: August 14, 2019)
_____

OPINION*
_____

FISHER, *Circuit Judge*.

Anthony Johnson was sentenced to more than four years' imprisonment for

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

violating the terms of his supervised release. He challenges factual findings and legal conclusions underlying his sentence, and also argues that the sentence is procedurally unreasonable. We will affirm.

I.

In 2010, Johnson was convicted of two counts of possession of crack cocaine with intent to deliver[1] and one count of possession of a firearm in relation to drug trafficking.[2] In 2017, he finished his prison sentence and began serving his supervised release. In 2018, his probation officer filed three petitions with the District Court, averring that Johnson had committed multiple violations of the terms of his supervised release.

The District Court held a hearing on the alleged violations. Johnson admitted one violation: failing multiple drug tests by testing positive for marijuana. The Government presented evidence of three other violations: an assault and two instances of possession of drugs with intent to deliver.

First, in March 2018, Johnson was pulled over by a state trooper who suspected he was violating the traffic code because his window tint was too dark. The trooper testified that as he walked up behind Johnson's SUV, he noticed a "very strong masking odor," that is, an "artificial fragrance" such as an air freshener.[3] Johnson was polite and cooperative, but seemed nervous, with labored breathing and shaking hands. A records

---

[1] 21 U.S.C. § 841.
[2] 18 U.S.C. § 924(c)(1)(a)(i).
[3] App. 21-22.

check revealed that Johnson had a history of drug and weapon violations. In addition, a local borough police officer who happened by said he was familiar with Johnson "from a [Drug Enforcement Administration] roundup back in 2008."[4] The trooper gave Johnson a warning about the window tint and asked for permission to search the vehicle, which Johnson denied. However, the trooper believed he had reasonable suspicion that Johnson was dealing drugs and did not let him leave.

The trooper called for a K-9 unit. After the dog arrived and alerted to the odor of narcotics, the trooper searched the SUV and found a digital scale and a plastic bag of marijuana weighing about eight and a half ounces. The trooper testified that an ounce or less would be consistent with personal use; that scales are commonly used for drug distribution; and that the street value of the marijuana would be $1500 to $1700. Johnson was charged with felony possession with intent to deliver and was released after posting bail.

The second alleged violation took place a month later. Johnson encountered a man in a bar, called him a "snitch,"[5] punched him, and then kicked him after he fell to the floor. Johnson was charged with felony aggravated assault, simple assault, and harassment.

Five days after the assault, an Aliquippa police officer pulled Johnson over

---

[4] App. 22-23.
[5] App. 79.

because there was a warrant for his arrest. Within a few minutes, the scene was surrounded by thirty to fifty people, some of whom, for reasons unknown to the officer, were trying to access the vehicle. When backup arrived, two officers began to secure the SUV and one of them spotted two baggies inside, in plain view, that looked like cocaine. When the officer picked up a nearby napkin to protect himself as he moved the baggies, two glassine bags fell out of the napkin. The glassine bags appeared to contain heroin, and the plastic baggies field-tested positive for powder and crack cocaine. The officer testified at the hearing that the drugs did not appear to be for personal use because of their quantities, their various types, and the lack of consumption paraphernalia, such as a pipe or syringe.

The officer testified that he watched the SUV throughout the incident and none of the bystanders gained access to it. A witness gave conflicting testimony that, when she arrived at the scene, Johnson was in the back of the police car, a different man was sitting in the driver's seat of the SUV, and a woman was grabbing her purse out of the SUV. The witness said that a county sheriff pulled up and "screamed out[,] ['][W]hy are they in that truck[?][']"[6] It was at that point, the witness testified, that the police made everyone step away from the SUV.

After hearing the evidence, the District Court ruled that Johnson had violated the terms of his supervised release and that the assault and the two possessions with intent to

---

[6] App. 98.

4

distribute were Grade A supervised release violations. Further, the court ruled that one of the underlying offenses of which Johnson was convicted in 2010—possession of a firearm in relation to drug trafficking[7]—was a Class A offense. The court imposed multiple terms of imprisonment, running concurrently, for an effective overall sentence of 50 months, followed by five years' supervised release. Johnson appeals.

## II.[8]

In order to revoke supervised release, a district court must find, by a preponderance of the evidence, that the defendant violated the terms of his release.[9] The court must then refer to the Sentencing Guidelines, which provide a table for determining the defendant's sentencing range.[10] The length of the sentence depends on three variables: the grade of supervised release violation the defendant committed, the class of his underlying criminal offense, and his criminal history category.[11] For the sentence to be procedurally reasonable, the district court must (among other tasks) take into account the sentencing factors that form a part of any criminal sentencing.[12]

---

[7] 18 U.S.C. § 924(c)(1)(a)(i).

[8] The District Court had jurisdiction over Johnson's federal offenses and had the authority to revoke his supervised release and impose a prison term. 18 U.S.C. §§ 3231, 3583(e)(3). We have appellate jurisdiction to review the District Court's final judgment and sentence. 28 U.S.C. § 1291; 18 U.S.C. § 3742(a).

[9] 18 U.S.C. § 3583(e)(3).

[10] U.S. Sentencing Guidelines Manual § 7B1.4 (2016). The 2016 Manual was in effect when Johnson was sentenced.

[11] *Id.*

[12] 18 U.S.C. § 3583(e) (requiring court to consider factors set forth in 18 U.S.C. § 3553(a)).

Johnson attacks all three phases of this decision-making process: the factual findings that he violated his release terms; the categorizations of his violations and underlying offense; and whether his sentence was procedurally reasonable.

A.

Johnson challenges the factual findings with regard to both the marijuana possession and the cocaine possession.

Johnson's attack on the marijuana violation is twofold. First, he argues that his SUV was unconstitutionally searched and that the evidence found—the marijuana and the scale—should have been suppressed. Second, he argues that the evidence did not show he intended to distribute the marijuana. We review for clear error the factual findings supporting a decision to revoke supervised release, and we review legal issues de novo.[13]

Johnson's suppression argument begins with his assertion that we should extend the exclusionary rule to supervised release proceedings. The Government counters that the exclusionary rule has not been extended beyond the trial context.[14] We decline to reach this question because we conclude that, regardless of the applicability of the exclusionary rule, the search was lawful.

After pulling Johnson over, the trooper developed a reasonable suspicion that Johnson was engaged in criminal activity. Johnson appeared nervous; there was a strong

---

[13] *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008).

[14] Appellee's Br. 21 (citing, among others, *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364-69 (1998); *United States v. Bazzano*, 712 F.2d 826, 831 (3d Cir. 1983)).

masking odor of air-freshener; and Johnson had a criminal history.[15] These observations

gave rise to reasonable suspicion—that is, "'a particularized and objective basis' for

suspecting [Johnson] of criminal activity"[16] in light of the "totality of the

circumstances."[17] Therefore, it was not a Fourth Amendment violation for the officer to

extend the traffic stop to call for a canine to perform a drug sniff.[18]

Johnson's second argument regarding the marijuana violation—that the evidence

was insufficient to show intent to distribute—also fails.[19] The District Court relied on the

testimony of the state trooper, who said, based on his experience, that the marijuana was

worth between $1500 and $1700; that such a quantity was not consistent with personal

use; and that scales like the one found in Johnson's SUV are used for distribution.

Johnson counters that he admitted to using marijuana for back pain; the marijuana was

---

[15] Each of these facts is a valid factor in establishing reasonable suspicion. *United States v. Green*, 897 F.3d 173, 187 (3d Cir. 2018) (criminal record); *Johnson v. Campbell*, 332 F.3d 199, 206-07 (3d Cir. 2003) (nervous behavior); *United States v. Leal*, 385 F. Supp. 2d 540, 548 (W.D. Pa. 2005), *aff'd*, 235 F. App'x 937 (3d Cir. 2007) (strong odor of air freshener).

[16] *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

[17] *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 417).

[18] *See Green*, 897 F.3d at 179 (officer violates Fourth Amendment when, "without reasonable suspicion, [he] diverts from [the] stop's traffic-based purpose to investigate other crimes," such as by calling for a dog to sniff for drugs).

[19] Possession without the intent to distribute would, presumably, be a Grade B violation, which could result in a shorter sentence. *See* U.S.S.G. §§ 7B1.1 (Grade A violations include "controlled substance offense[s]"), 4B1.2 ( "controlled substance offense[s]" include drug distribution crimes, but not simple possession).

not packaged in distribution quantities; and there was no physical evidence of distribution, such as weapons, cash, or baggies. However, the District Court needed to find possession with intent to distribute only by a preponderance of the evidence.[20] Johnson's argument, which amounts to a different interpretation of the evidence, does not show clear error.

Johnson argues that the evidence was also insufficient with respect to the possession with intent to distribute cocaine. He argues that during the stop when the cocaine was found, several people had access to his SUV, and one of them may have put the drugs into it. Once again, his argument amounts to a different interpretation of the evidence. A bystander testified that two people had access to the car, but the police officer testified that no one accessed it. The fact that two witnesses gave conflicting testimony, and the District Court credited one of them, is not clear error.[21]

## B.

Johnson challenges the District Court's classifications of his underlying charge of conviction and one of his supervised release violations, namely, the assault. We review

---

[20] 18 U.S.C. § 3583(e)(3).

[21] *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (noting, in civil context, that "[w]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

these legal issues on a plenary, or de novo, basis.[22]

Johnson's underlying counts of conviction included possession of a gun in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). Johnson argues that the District Court erred in ruling this a Class A felony. There is no letter grade classification in the statute itself.[23] Therefore, the offense is classified by reference to the classification statute, which provides that "[a]n offense that is not specifically classified" is a Class A felony "if the maximum term of imprisonment authorized is . . . life imprisonment."[24] Section 924(c)(1)(A) does not provide an explicit maximum; rather, the relevant portion specifies that the offender "shall . . . be sentenced to a term of imprisonment of not less than five years."[25]

We have held that "the express inclusion of a minimum sentence, but not a maximum sentence" in § 924(c)(1)(A) "indicates an intention to make life imprisonment the statutory maximum."[26] Our Internal Operating Procedures "prohibit[] a panel of this court from overruling a holding of a prior panel expressed in a published opinion."[27] Therefore, Johnson's argument—that, properly construed, § 924(c)(1)(A) does not

---

[22] *United States v. Carter*, 730 F.3d 187, 190 (3d Cir. 2013); *United States v. Shabazz*, 564 F.3d 280, 288 n.7 (3d Cir. 2009).
[23] *See* 18 U.S.C. § 924.
[24] *Id.* § 3559(a)(1).
[25] *Id.* § 924(c)(1)(A)(i).
[26] *Shabazz*, 564 F.3d at 289.
[27] *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 294 n.9 (3d Cir. 1998) (citing 3d Cir. I.O.P. 9.1).

authorize a life sentence—is unavailing.

Johnson also challenges the classification of the assault as a "crime of violence" and therefore a Grade A supervised release violation. Because he did not raise the issue in the District Court, we review for plain error: if the error is plain and affects substantial rights, we may exercise our discretion to correct it if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[28]

Under the Sentencing Guidelines, Grade A violations include "crime[s] of violence,"[29] that is, offenses "punishable by imprisonment for a term exceeding one year, that . . . ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another."[30] The District Court found that the assault met the elements of simple assault under Pennsylvania law and was therefore a "crime of violence," which constitutes a Grade A violation of supervised release.

Johnson points to *United States v. Otero*, where we held that Pennsylvania simple assault is not a categorical crime of violence because it has a minimum *mens rea* of recklessness, meaning that the defendant might not have the requisite "intent to use force."[31] In *Otero*, we were bound by the categorical approach, which permits

---

[28] *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal citation and alterations omitted).
[29] U.S.S.G. § 7B1.1(a)(1).
[30] *Id.* § 4B1.2(a).
[31] *United States v. Otero*, 502 F.3d 331, 335 (3d Cir. 2007) (quoting *Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005)).

consideration only of the elements of the offense, not the facts of the case.[32] Here, the categorical approach did not apply, because the proceeding was a revocation of supervised release.[33] The District Court considered the facts and found that Johnson committed "a knowing and intentional assault," not a reckless one.[34] Therefore, it would appear the court did not err in ruling the assault a Grade A violation.

Even if the court had erred, any mistake would not be a plain error "affect[ing] substantial rights."[35] As the Government points out, the District Court held that Johnson committed two other Grade A violations, namely, the two possessions with intent to distribute. He does not challenge the District Court's ruling that both were Grade A violations.[36] In addition, he concedes that "where there is more than one violation of the conditions of supervision, the grade of the violation is determined by the violation having the most serious grade."[37]

Therefore, even if we take the assault out of the picture, Johnson's most serious violation would still be Grade A, and his Guidelines sentencing range would not change. Assuming there was error, it did not affect Johnson's substantial rights, and under the plain-error rule, we may not correct it.

_____

[32] *Id.* at 335-36.
[33] *Carter*, 730 F.3d at 192.
[34] App. 127.
[35] *Johnson*, 520 U.S. at 467.
[36] Johnson does challenge these violations based on the Fourth Amendment and the sufficiency of the evidence, but his challenges fail, as explained *supra*, Section II.A.
[37] Appellant's Br. 20 (quoting U.S.S.G. § 7B1.1(b)).

11

C.

Johnson argues that his sentence is procedurally unreasonable because the District Court failed to take into account the 18 U.S.C. § 3553(a) factors.[38] Because Johnson did not object in the district court, the plain-error rule applies.[39]

The District Court was required to give the § 3553(a) factors "[m]eaningful consideration," but it did not need to "discuss and make findings as to each . . . factor[] if the record makes clear [it] took the factors into account in sentencing."[40] Johnson argues that the District Court failed to consider his history and characteristics—specifically, his prior lengthy incarceration, his car accidents and resulting pain issues, and his attempts to better himself and support his children.

In explaining its sentence, the court acknowledged that Johnson has two young sons to whom he is "obviously devoted"; recommended incarceration close to home and the provision of "appropriate medical care for his back condition and . . . pain management issues"; and noted that the car accidents may have "precipitated this drive to obtain . . . money from drug activity."[41] The court also expressed concern about the assault, which it considered Johnson's "most problematic" violation, and added that "it's

---

[38] 18 U.S.C. § 3583(e) (directing court, upon revocation of supervised release, to consider factors set forth in 18 U.S.C. § 3553(a)(1)); *id.* § 3553(a)(1) (directing court to consider, among other factors, the history and characteristics of the offender).

[39] *United States v. Vazquez-Lebron*, 582 F.3d 443, 445 (3d Cir. 2009).

[40] *United States v. Thornhill*, 759 F.3d 299, 311 (3d Cir. 2014) (quoting *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007)).

[41] App. 135-36.

12

a very sad situation" for Johnson to deal drugs upon his release from his long imprisonment.[42] The court imposed a "fairly significant sentence within the [G]uideline range" to deter such conduct in the future and protect the public.[43] In sum, the District Court considered each of the factors Johnson claims it overlooked. There was no plain error.

III.

For the foregoing reasons, we will affirm.

---

[42] App. 136.
[43] App. 137.