**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1659
_____

UNITED STATES OF AMERICA

v.

JOSEPH OLINSKY,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2:06-cr-00076-001)
District Judge: Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
September 22, 2022
_____

Before: CHAGARES, *Chief Judge*, McKEE* and PORTER,
*Circuit Judges*.

(Filed: April 14, 2023)

_____

OPINION*
_____

_____

* Judge McKee assumed senior status on October 21, 2022.
* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not
binding precedent.

PORTER, *Circuit Judge*.

Joseph Olinsky appeals the sentence the District Court imposed when it revoked his supervised release due to a new criminal conviction. He claims that the District Court failed to identify his new conviction on the record during the revocation hearing, wrongly applied the Sentencing Guidelines' "crime of violence" enhancement, and improperly sentenced him beyond the statutory maximum for one of his offenses. We disagree and will affirm.

I

Appellant Joseph Olinsky was serving two concurrent terms of supervised release when he was convicted of aggravated assault in violation of 18 Pa. Cons. Stat. § 2702(a)(1) and other offenses. Committing a new crime is a violation of supervised release, so United States Probation asked the District Court to revoke Olinsky's supervision and return him to federal prison. At the revocation hearing, Olinsky admitted to multiple new convictions. The District Court revoked Olinsky's supervised release based on his admission.

Olinsky faced a maximum term of 24 months' reimprisonment for each violation. 18 U.S.C. § 3583(e)(3). Probation calculated his advisory Guidelines range at 33–41 months because it determined that his aggravated assault conviction was for a "crime of violence." U.S.S.G. §§ 7B1.1, 4B1.2. Olinsky agreed with the range submitted by Probation, but he argued that he could not be reimprisoned for the felon-in-possession conviction because he had already served the statutory maximum of 120 months. *See* 18

2

U.S.C. §§ 922(g), 924(a)(2) (2006 ed.).[1] He also asked for either a downward departure or a variance.

The District Court sentenced Olinsky to concurrent terms of 24 and 17 months for violating the conditions of his supervised release. The terms are consecutive to Olinsky's Pennsylvania sentence. The District Court did not grant Olinsky a departure or variance. He appealed.

II

The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's Guidelines calculations and related legal conclusions de novo, its factual findings for clear error, and its application of the Guidelines to the facts for an abuse of discretion. *United States v. Rodriguez*, 40 F.4th 117, 120 (3d Cir. 2022). Because Olinsky failed to object to the District Court's Guidelines range, he must show that any error committed by the Court on that front was plain and compels correction as an exercise of our discretion. Fed. R. Crim. P. 52(b). Olinsky presented his constitutional arguments below, so we review them de novo. *United States v. Gordon*, 290 F.3d 539, 546 (3d Cir. 2002).

---

[1] When Olinsky was sentenced for violating § 922(g)(1) in 2007, the maximum imprisonment for that offense was 10 years. 18 U.S.C. § 924(a)(2) (2006 ed.). Congress recently increased the maximum penalty to 15 years. Bipartisan Safer Communities Act, Pub. L. 117-159, Div. A, Title II, § 12004(c), 136 Stat. 1313, 1329 (2022), codified at 18 U.S.C. § 924(a)(8). The revised penalty does not apply to Olinsky because a law "that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed," violates the ex post facto clause, U.S. Const. art. 1, § 9, cl. 3. *Calder v. Bull*, 3 U.S. 386, 390 (1798); *see* U.S.S.G. § 1B1.11(a).

Olinsky argues that the District Court committed two plain errors. First, he claims that the Court was required to identify his "crime of violence" during the revocation hearing but did not do so. Second, he maintains that aggravated assault under § 2702(a)(1) is not a "crime of violence" under the Guidelines. We disagree on both counts.

A

There are three grades of supervised release violations. Grade A is the most serious and includes felonies that qualify as a "crime of violence," certain firearm and drug crimes, and offenses punishable by more than 20 years. U.S.S.G. § 7B1.1(a). Grade B covers most other felonies. Everything else, including non-criminal violations of supervised release, falls under Grade C. These are distinctions with a difference: for an offender with a criminal history category of VI, like Olinsky, Grade A violations have an advisory range of 33–41 months of imprisonment compared to 21–27 months for Grade B and 8–14 months for Grade C. *Id.* § 7B1.4(a).

Before the revocation hearing, Probation asserted that Olinsky's § 2702(a)(1) conviction was a Grade A violation, which made for a Guidelines range of 33–41 months. In his sentencing memorandum, Olinsky acknowledged that he had been convicted of "aggravated assault," among other crimes, and adopted Probation's Guidelines range. App. 21, 29 (discussing "the applicable advisory guideline range of 33–41 months."). At the hearing, Olinsky admitted that he had been convicted of assaulting Troy Harris and identified the Pennsylvania criminal case by its docket number.

Despite all this, Olinsky now argues that the District Court failed to "set out [the] specific crime" that supported a Grade A classification as required by our decision in *United States v. Carter*, 730 F.3d 187, 189–93 (3d Cir. 2013). We disagree.

In *Carter*, the district court sentenced the releasee for uncharged conduct and failed to explain the specific Grade A offense that he had committed. *Id.* at 192–93. This was error because it left us unable to confirm that the conduct qualified as a crime of violence. *Id.*

Olinsky's case is different. He admitted to being convicted of "Aggravated Assault" in his sentencing memorandum and placed the specific crime on the record during the revocation hearing when he identified the Pennsylvania docket containing that conviction. App. 21, 46. He also told the District Court that he had been given the maximum sentence for "aggravated assault." App. 60. For its part, the government submitted a criminal complaint specifying the § 2702(a)(1) charge against Olinsky as well as the state court's order sentencing him for "aggravated assault." It also offered to play a video of the assault during the revocation hearing but did not do so, seemingly in exchange for Olinsky's admission. In the end, the District Court granted Probation's motion to revoke supervised release "[b]ased on Mr. Olinsky's admission of the conviction in the Court of Common Pleas of Washington County."[2] App. 49.

-------------------

[2] The District Court should have conducted a Guidelines calculation on the record, including an express identification of 18 Pa. Cons. Stat. § 2702(a)(1) as the predicate crime of violence. *See United States v. Clark*, 726 F.3d 496, 500 (3d Cir. 2013) (requiring a sentencing court to calculate the advisory Guidelines range in the revocation context). But given that § 2702(a)(1) is a crime of violence, *see* Section III(B) *infra*, any

5

The concern in *Carter* was that the court's omission of the specific offense required us to speculate about what crime of violence the court thought the defendant had committed. Here, it was clear to everybody what conviction was being discussed. Indeed, Olinsky admitted it. So we reject his argument that the Court committed a *Carter* error.

B

Section 2702(a)(1) provides:

> A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

Olinsky argues that aggravated assault under this statute is not a "crime of violence" for Guidelines purposes. He is incorrect.

Section § 4B1.2(a) of the Guidelines defines "crime of violence" as any offense punishable by more than a year in prison that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Subsection (1) is often termed the "elements clause" and subsection (2) the "enumerated offenses clause."

---

procedural error by the District Court is not plain. *See United States v. Flores-Mejia*, 759 F.3d 253, 259 (3d Cir. 2014) (holding that an error is plain when it affects substantial rights, which requires showing that "it affected the outcome of the District Court proceedings.").

Section 2702(a)(1) does not qualify under the elements clause because "the use or attempted use of physical force is not an element of the crime of aggravated assault under Section 2702(a)(1)." *United States v. Harris*, 289 A.3d 1060, 1074 (Pa. 2023).

The enumerated offenses clause lists "aggravated assault" as a crime of violence, and § 2702(a)(1) is titled "Aggravated assault." Still, offense labels are not necessarily determinative: a crime only triggers the enhancement if its "elements are the same as, or narrower than, those of the generic offense." *United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014).

We recently considered whether New Jersey's aggravated assault statute qualifies as a "crime of violence." *United States v. Brasby*, 61 F.4th 127, 130 (3d Cir. 2023). N.J. Stat. Ann. § 2C:12-1(b)(1) provides that a person is guilty of aggravated assault if he "[a]ttempts to cause serious bodily injury to another, or . . . under circumstances manifesting extreme indifference to human life recklessly causes such injury[.]" *See Brasby*, 61 F.4th at 130. So New Jersey's § 2C:12-1(b)(1) and Pennsylvania's § 2702(a)(1) are identical in their operative terms: they criminalize completed or attempted aggravated assault resulting in serious bodily injury that is committed with extreme-indifference recklessness.

Like the defendant in *Brasby*, Olinsky was plainly convicted of actual aggravated assault, not the attempt offense. *See* App. 67, 71, 84; *Brasby*, 61 F.4th at 135. And in *Brasby*, we held that New Jersey's aggravated assault offense "matches the generic federal offense" and is therefore a "crime of violence" under the Guidelines. *Brasby*, 61 F.4th at 130, 142–43. *Brasby* and its thorough application of the categorical approach

7

bind us here. Aggravated assault under § 2702(a)(1) is a "crime of violence," so we reject Olinsky's argument that the District Court miscalculated his Guidelines range.

C

Next, Olinsky claims that the District Court failed to adequately consider his requests for a downward variance or departure. Here again, Olinsky acknowledges that our review is for plain error because he did not object below. The District Court adequately addressed Olinsky's arguments.

"A traditional sentencing 'departure' diverges at step 2 from the originally calculated range for reasons contemplated by the Guidelines themselves." *United States v. Floyd*, 499 F.3d 308, 311 (3d Cir. 2007) (quoting *United States v. Jackson*, 467 F.3d 834, 837 n. 2 (3d Cir. 2006)). "In contrast, a 'variance' diverges at step 3 from the Guidelines, including any departures, based on an exercise of the court's discretion under § 3553(a)." *Id.* (quoting *United States v. Gunter*, 462 F.3d 237, 247 n. 10 (3d Cir. 2006)). When imposing a sentence, district courts must (1) calculate the defendant's Guidelines range, (2) rule on any motions for departure and, if applicable, explain how the departure affects the advisory range, and (3) consider the relevant factors set out in 18 U.S.C. § 3553(a) to determine whether a variance is appropriate. *Gunter*, 462 F.3d at 247. We have already rejected Olinsky's Guidelines argument. His claim that "[t]he district court did not acknowledge [his] non-frivolous arguments for a variance or downward departure" also fails. Appellant Br. 48.

8

In his sentencing memorandum and at the revocation hearing, Olinsky asked for a downward departure due to his "age and mental health condition." App. 33, 52. The Court responded directly:

> I am looking at your mental health history. I am glad that you are on medication for your bipolar, for your depression, for your PTSD. That is good. I cannot ignore the past criminal conduct from which I earlier saw you. I have to today impose a sentence, however, that will make you think twice of engaging in any kind of conduct again that might bring you back here.
>
> Now, I understand what [defense counsel] says when he says how long you might be in jail. I know it might be a long time.

App. 62–63.

Olinsky's requests for a variance under the § 3553(a) factors were similar. He noted that he would "be a very old man when he is released from [the Pennsylvania] sentence," and that he "bears the physical and mental scars" from his previous prison stay. App. 27–28. He also stressed that he was originally sentenced as a career offender because of a simple assault conviction that no longer qualifies as a career-offender predicate. He acknowledged, though, that the intervening change in the law did not impact his Guidelines range.

The District Court adequately addressed Olinsky's variance requests, which had significant overlap with his departure arguments. The Court stressed that it was considering "the history and characteristics of the person I'm sentencing." App. 62. And although it observed that Olinsky had been convicted for "very violent" conduct, it did not dwell on the punitive functions of sentencing, which 18 U.S.C. § 3583(e) does not require courts to consider in the revocation context. App. 62. Instead, it highlighted "the

9

nature and circumstances of the offense," considerations of deterrence and protection of the public, and available treatment programs. App. 62–65; 18 U.S.C. § 3553(a)(1), (2)(B)–(D).

We reject Olinsky's arguments that the District Court committed error in considering his arguments for a departure or variance.

IV

18 U.S.C. § 3583(e) authorized the District Court to sentence Olinsky to up to two years' imprisonment for violating the supervised release attached to his conviction for possessing a firearm as a prohibited person under 18 U.S.C. § 922(g)(1). Applying § 3583(e), the District Court found Olinsky in violation by the preponderance of the evidence and imposed a sentence of two years. Olinsky argues that, because he had already served the ten-year maximum then applicable to § 922(g)(1) convictions when he violated his release, the District Court violated his Fifth and Sixth Amendment rights by returning him to prison under § 3583(e) based on facts that were not found by a jury.

It is clear that § 3583(e) authorized the District Court to sentence Olinsky as it did. The more difficult question is whether the constitution permits judges to find facts that elevate a convicted person's total sentence—original incarceration plus reimprisonment for violating supervised release—above the statutory maximum for the underlying offense. Under *Apprendi v. New Jersey*, judges generally cannot make factual findings that increase a defendant's maximum prison term. 530 U.S. 466 (2000). The United States Supreme Court has recently debated, and left unresolved, the question whether *Apprendi* applies to supervised release proceedings. *United States v. Haymond*, 139 S. Ct.

10

2369 (2019).[3] But we have held that it does not. *United States v. Dees*, 467 F.3d 847, 855 (3d Cir. 2006). In any event, Olinsky falls within an exception identified in *Apprendi* itself because his sentence was based on the "fact of a prior conviction," a conviction that was returned by a Pennsylvania jury under the reasonable doubt standard. 530 U.S. at 490.

A

In *Dees*, a supervised releasee claimed that his revocation sentence was unconstitutional because it was based on facts found by a judge. 467 F.3d at 854–55. *Apprendi* forbids that, but it was a case about a criminal sentencing proceeding, not a revocation of probation, parole, or supervised release. 530 U.S. at 468–69. We declined to extend *Apprendi* beyond its facts:

> *Apprendi* and [*United States v. Booker*, 543 U.S. 220 (2005),] do not invalidate the preponderance of the evidence standard. *See, e.g.*, [*United States v. Huerta–Pimental*, 445 F.3d 1220, 1225 (9th Cir. 2006)] ("There is no right to a jury trial for such post-conviction determinations."); *United States v. Carlton*, 442 F.3d 802, 807–10 (2d Cir. 2006); *United States v.*

---

[3] In *Haymond*, the Supreme Court invalidated 18 U.S.C. § 3583(k), which imposed a five-year mandatory minimum on releasees originally convicted of certain sex offenses who violated their supervision by committing another sex offense. 139 S. Ct. at 2373. But the Justices split on rationale: four thought that *Apprendi* applies to supervised release and prohibits "judicial factfinding" that "increase[s] the legally prescribed range of allowable sentences." *Id.* at 2378 (quotation omitted) (plurality op. of Gorsuch, J.). Four dissenters rejected the application of *Apprendi* to supervised release. *Id.* at 2387 (Alito, J., dissenting). So did Justice Breyer, but because he concurred in the judgment invalidating the provision at issue, there was no holding on the question of *Apprendi*. *Marks v. United States*, 430 U.S. 188, 193–94 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

*Cordova*, 461 F.3d 1184 (10th Cir. 2006); *United States v. Hinson*, 429 F.3d 114, 117 (5th Cir. 2005).

*Dees*, 467 F.3d at 855. The releasee also claimed that his sentence was impermissible because the court imposed three consecutive terms of reimprisonment totaling 72 months. *Id.* at 854. This exceeded Dees's advisory range under the Guidelines, which were binding when he was originally sentenced. *Id.* We held that he could not aggregate his revocation sentences to establish an *Apprendi* error. *Id.*

Although its reasoning was brief, *Dees* remains good law in our Circuit. *See United States v. Seighman*, 966 F.3d 237, 244–45 (3d Cir. 2020) ("[W]e have rejected the argument that a defendant can establish an *Apprendi* violation by 'aggregat[ing] . . . revocation sentences.'") (quoting *Dees*, 467 U.S. at 854)). So Olinsky's claim that *Apprendi* prevented the District Court from finding him in violation by a preponderance of the evidence and returning him to prison—in effect, increasing the maximum sentence for his § 922(g)(1) conviction—fails under our precedent.

B

Olinsky's argument also fails under *Apprendi* itself. The defendant in that case challenged a state hate crime law that doubled the sentencing range for certain offenses if the judge determined that racial bias was present. 530 U.S. at 474. The Supreme Court invalidated the statute. Quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999), *Apprendi* held:

> under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be

charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

530 U.S. at 476. Olinsky's case lives in the parenthetical. As the Court reiterated later in its decision, "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added).

At the revocation hearing, Olinsky admitted that he had been convicted for assaulting Troy Harris and identified the Pennsylvania docket containing "that conviction." App. 46. "Based on Mr. Olinsky's admission," the District Court revoked his release and sentenced him. App. 49, 63. So Olinsky's sentence was based on "the fact of a prior conviction." *Apprendi*, 530 U.S. at 490. Even if *Apprendi* applied, we would reject Olinsky's claim.

V

The District Court did not plainly err in failing to identify Olinsky's aggravated assault conviction on the record or in applying the Guidelines' "crime of violence" enhancement, nor did it fail to address his arguments for a departure or variance. And the Court's revocation sentences are permitted under both *Dees* and *Apprendi*. So we will affirm.