## NEGLIGENCE OF CHAUFFEUR CAN NOT BE IMPUTED TO PASSENGER.

Court of Appeals for Hamilton County.

THE CINCINNATI TRACTION CO. v. HARGRAVE.

Decided, May 31, 1913.

*Injury to a Passenger in an Automobile at a Street Car Crossing—*
*Negligence of Chauffeur Not Negligence of Passenger—Ordinary*
*Care at- Street Crossing—Duty to Ring Gong—Charge to Jury.*

Where a woman, riding as a guest of the driver, in an automobile over
which she has no control, is injured in a collision with a street
car, occasioned by the negligence of its motorman, contributory
negligence on the part of the automobile driver can not be imputed
to her to prevent her recovery of damages from the street railway
company.

*Kinkead & Rogers,* for plaintiff in error.
*Moulinier, Bettman & Hunt,* contra.

JONES (Oliver B.), J.; SWING, J., and JONES (E. H.), J.,
concur.

A collision between a street car and an automobile at the cor-
ner of Chapel street and Alms place, Walnut Hills, resulted in
serious injury to plaintiff below, Carrie B. Hargrave, who was
riding in the rear seat of the automobile. She was the guest
of her nephew, James C. Hobart, who was driving the machine—
his father sitting with him on the front seat, while his mother
and plaintiff and her daughter sat on the rear seat. The auto-
mobile was being driven eastwardly on Chapel street down grade
and the street car was going westwardly on Chapel street to
Alms place and then turned a curve from Chapel street south-
wardly into Alms place. There was a double track east of Alms
place in Chapel street and a single track west of Alms place.
The street car was a mail car, not then in service but merely
being transferred from one car barn to another. Its motorman
was not a regular motorman and had never run a passenger

street car, but had taken instructions at the company's school for motormen and had run cars to and·from the car barn. A car repairer was with him on the front end of the car.

There is considerable conflict in the testimony as to just how the accident took place and who was to blame. The witnesses on both sides agree that outside of the street car and the automobile the streets were free from traffic. It was a bright Sunday afternoon in August, between two and three o'clock, and the occupants of each vehicle could see the other some distance away. All agree that the car came up slowly and made a stop, or almost a complete stop, before turning the curve. The automobile was running on the south side of Chapel street and the driver sounded his horn twice just as he reached Alms place. Witnesses of plaintiff below say that seeing the car stop or nearly so and not hearing any bell or gong from it, the driver, who had been driving about as fast as a horse would trot, taking it for granted that it was stopping to give him a right of way, proceeded to cross in front of it, continuing along the same course he was driving, and was almost across the track when the motorman, turning on his power suddenly, plunged his car forward, striking the automobile on its rear left wheel and forcing its front part over the curb on the sidewalk at the corner, throwing plaintiff below out and thus causing the injury.

Witnesses of defendant below on the other hand say that the automobile was running very fast, and that its driver, trying to head off the street car, ran the front wheel of his automobile over the curb at the corner so that it swung the rear part of the automobile to the northward in such a way as to strike the fender of the car. The motorman says that he barely stopped before reaching the curve, to make what he called a safety stop, and getting two bells from the conductor, rang the gong and turned on his controller to furnish power to send the car around the curve; that he had seen the automobile sixty feet away when he made his stop and then had not seen it until after he had thrown on his power when it was ten feet away. He says that he then reversed power and set the brakes and the car came to an immediate stop, and the automobile just dodged in

front of it, the front wheel striking the curb and the rear part being thrown against the street car. He explains that the reason why he proceeded with his car was because he thought the automobile was going to swing over to the north side of Chapel street, where the distance between the street railroad track and the curb is much wider than the distance between the track and the south curb. If it had done so it would have had to change its course, but would have made it entirely unnecessary to cross in front of the car.

It will therefore be seen that both the motorman and the driver of the automobile were mistaken either as to the speed of the other, the distance in which the crossing could be made or the intention of the other as to who should cross first, and under the law as recently laid down in *Steubenville & Wheeling Traction Co.* v. *Brandon, Admr.,* 87 Ohio St., 187, "Such a situation presents a case where different minds might reach opposite conclusions, and thus was a proper case for a jury under proper instructions," and a court of review, without having opportunity of seeing the witnesses upon the stand and hearing the testimony from their lips, would hesitate to disturb the verdict of a jury and the decision of a trial judge upon the question of the weight of the evidence.

But regardless of the question of contributory negligence on the part of the driver of the automobile, there seems to be no question but that negligence was shown on the part of defendant below by its motorman so far as the plaintiff below in this case is concerned. She had no control whatever of the automobile, and any negligence on the part of its driver can not be imputed to her. The doctrine of imputed negligence does not prevail in Ohio. *Davis* v. *Guarnieri,* 45 Ohio St., 470; *Saint Clair Street Ry. Co.* v. *Eadie,* 43 Ohio St., 91; *Cincinnati Street Ry. Co.* v. *Wright, Admr.,* 54 Ohio St., 181; *Covington Transfer Co.* v. *Kelly,* 36 Ohio St., 86; *C., C., C. & I. Rd. Co.* v. *Manson,* 30 Ohio St., 451; *Bellefontaine & Indiana Rd. Co.* v. *Snyder,* 18 Ohio St., 399.

The refusal of the special charge asked by defendant below to be given before argument is urged as a reason for reversal. It was as follows:

"It is the duty of a person operating an automobile as he approaches a street crossing to have his automobile under control, and the fact that he sounds his horn of itself gives him no right of way on the street, but it is his duty to observe care in running the automobile, having due regard to the rights of other persons using the streets including those operating street cars; and a motorman operating a street car on a public street has a right to presume, until he discovers or ought to discover the contrary, that a person operating an automobile will do so with ordinary care for the safety of others and for his own safety."

If this case were one brought by the driver of the automobile for injuries to himself this charge would have been a proper one. But as the action is brought by one who could not be held responsible for any contributory negligence of the driver, it was not error in the court to refuse it.

The clause of the geneal charge, "The street railroad company must recognize the equal rights of all others and cause its servants who operate the car to exercise the ordinary care which the increased danger arising from the travel at street crossings demands, and this includes the duty of having its cars under control, but not running its cars at an unreasonable rate of speed and ringing the gong at street crossings," was excepted to by defendant, who now as plaintiff in error here urges that it, in effect, charges that it was the absolute duty of the motorman to ring his gong as he approached a street crossing. Possibly it may have been so intended, but the language as used does not make it such a charge as the use of the word "but" in the last clause where "and" may have been intended, rather excludes the ringing of the gong as a positive duty. We do not think the giving of this charge in the words used constitutes prejudicial error. The ringing of the gong is for the purpose of attracting attention to warn persons of the approaching car. In this case there was some testimony that the gong was rung, but at any rate all agreed that the occupants of the automobile distinctly saw the street car and knew of its approach, the only question being as to how fast and when it was going to move, and the gong would not indicate that.

We find no errors in the record prejudicial to plaintiff in error.

Judgment affirmed.