**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2253
_____

CRAIG A. GENESS

v.

ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS;
COMMONWEALTH OF PENNSYLVANIA; PENNSYLVANIA
DEPARTMENT OF HUMAN SERVICES

Administrative Office of Pennsylvania Courts,
                                                          Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cv-00876)
District Judge: Honorable Mark A. Kearney
_____

Argued May 26, 2020

Before: AMBRO, HARDIMAN, and RESTREPO, *Circuit Judges*

(Filed: September 8, 2020)
_____

William A. Pietragallo, II [ARGUED]
James W. Kraus
Pietragallo Gordon Alfano Bosick & Raspanti
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219

Robert J. Krandel
Caroline P. Liebenguth

Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street
Suite 1414
Philadelphia, PA 19102

 *Counsel for Appellant*

Joel S. Sansone [ARGUED]
Law Offices of Joel Sansone
603 Stanwix Street
Two Gateway Center, Suite 1290
Pittsburgh, PA 15222

 *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RESTREPO, *Circuit Judge.*

Mentally disabled and deemed incompetent to stand trial, Craig Geness was detained for nearly a decade before the homicide charge against him was ultimately dismissed. His case exhibits inexcusable failures in Pennsylvania's criminal justice and mental health systems. While there is no doubt that Geness's case languished for far too long, we are limited here to the narrow question whether the Administrative Office of Pennsylvania Courts (AOPC) may plausibly be held liable for his misfortune.

This appeal arises from AOPC's motion to dismiss Geness's claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and the Fourteenth Amendment. The District Court denied AOPC's motion, finding that AOPC does not have sovereign immunity. For the reasons set forth below, we will reverse the District Court's judgment and remand for dismissal of Geness's Title II and Fourteenth Amendment claim against AOPC.

## I.  BACKGROUND AND PROCEDURAL HISTORY

The events leading up to this case reveal a breakdown in Pennsylvania's criminal justice system.[1] Geness is a

_____

[1] The following facts are taken from Geness's Second Amended Complaint except where otherwise noted.

permanently mentally disabled individual in his early fifties. On November 17, 2006, he was detained after being charged with aggravated assault. The charge was later amended to homicide. This stemmed from an incident at Geness's assisted living facility, McVey Personal Care Home, in Uniontown, Pennsylvania. *Geness v. Cox*, 902 F.3d 344, 349 (3d Cir. 2018). A resident of the facility fell from the building's porch and suffered serious injuries that resulted in his death a few weeks later. *Id.* Despite initial reports that the fall was an accident, the deceased resident's daughter contacted police to share her suspicion that he might have been pushed. *Id.* at 349. Police then initiated an investigation that led to the charge against Geness. *Id.* at 349–50.

On June 18, 2007, a judge for the Court of Common Pleas of Fayette County deemed Geness incompetent to stand trial and ordered him transferred to a psychiatric hospital for no more than sixty days to ascertain his capacity to stand trial and his potential to regain competency. Despite the judge's order, Geness was not immediately transferred because, he avers, "the waiting list for beds for persons deemed incompetent to stand trial far exceeded the number of beds that DHS [the Pennsylvania Department of Human Services] had made available." App. 38 ¶ 17. Approximately two months after the judge's order was entered, and with no psychiatric evaluation undertaken, another judge again "deemed [Geness] incompetent to stand trial and directed that a motion be filed when Plaintiff was deemed competent to proceed." App. 38 ¶ 19.

Another two months after that (approximately ten months after his arrest), Geness was finally transferred to a psychiatric facility where he underwent an evaluation on September 25, 2007 and was then returned to prison. He was

2

deemed incompetent with a "poor" prognosis for improvement, yet no action was taken by the court, and he remained imprisoned for years to come. App. 39 ¶ 21.

Throughout those years, his case was subject to the court's monthly "call of the list." This is when a Court of Common Pleas judge reviews a list of all pending criminal matters that are ripe for trial, addressing each case individually and either continuing it or scheduling the trial. The district attorney and public defender for each case attend this proceeding and provide the judge with relevant information.

In Geness's case, the district attorneys "acquiesced to the repeated continuance" of his trial—and his public defender "made no attempt to have [Geness's] case removed from the trial list, despite [his] known incompetency to stand trial" and despite the public defender's "authority and [] opportunity" to make an appropriate request. App. 40 ¶¶ 28, 30–31. Nor did any of the six judges who at one time or another presided over the "call of the list" intervene throughout three years of monthly check-ins.

On November 23, 2010, the public defender representing Geness "filed a motion requesting that [his] trial be continued until [he] became competent." App. 41 ¶ 35. Less than a week later, a judge ordered his transfer from prison to a psychiatric institution "for a period not to exceed 90 days" to again evaluate his competency and potential to regain competency. App. 41 ¶ 37. Geness was never transferred pursuant to that order and remained in prison. Once again, on August 17, 2011, a judge ordered a competency determination.

Finally, on September 4, 2011, approximately five years after Geness's arrest, a second competency evaluation was

3

conducted, this time at the prison. It was again determined that Geness was incompetent to stand trial and unlikely to improve. Later that month, a judge "ordered that [Geness] was not competent to stand trial and released him to be involuntarily committed to a Long Term Structured Residence ("LTSR"), there to remain without contact with the general public and to be returned to Fayette County Prison upon completion of his therapeutic program or upon a determination that he is competent to stand trial." App. 43 ¶ 48. On September 22, 2011, nearly five years after his arrest, Geness was transferred to a LTSR.

Approximately four years after that, with Geness's case all the while subjected to the monthly "call of the list," the Commonwealth "filed a proposed order for *nolle prosequi* all charges against the Plaintiff," stating that he "will never be competent for trial and that substantive evidentiary issues existed which would impair the Commonwealth's ability to meet its burden of proof." App. 43 ¶¶ 51, 53–54. On December 10, 2015, a judge entered the order *nolle prosequi* all charges against Geness. After nine years in custody without a trial, Geness was released.[2]

On June 17, 2016, Geness filed his original complaint against the County of Fayette, City of Uniontown, Jason Cox (formerly a Uniontown Police Department detective, now chief of police), and James and Jean McVey (owners of McVey Personal Care Home). He brought an Americans with Disabilities Act (ADA) and Fourteenth Amendment claim

---

[2] Throughout Geness's time in custody, his counsel filed four motions for habeas corpus and/or motions to dismiss the charge. No hearings were held or rulings made on those requests.

4

against the county and city, various civil rights claims under 42 U.S.C. § 1983 against all defendants, and an intentional infliction of emotional distress claim against Cox and the McVeys.

On March 6, 2017, Geness moved for leave to amend his complaint to add the Commonwealth of Pennsylvania as a party based on the same allegations. The District Court denied his motion for leave to amend, finding it barred by the *Rooker-Feldman* doctrine.

After various motions before the District Court, all defendants were dismissed except Detective Cox. Following discovery, Cox filed a motion for summary judgment, which the District Court granted on May 1, 2017. Geness appealed the summary judgment ruling on his § 1983 claims against Cox and the denial of his motion to amend his complaint to add the Commonwealth as a party.

On appeal, this Court affirmed the District Court's grant of Cox's summary judgment motion, reversed its denial of leave for Geness to amend his complaint to add the Commonwealth, and remanded for reinstatement of Geness's claim under Title II of the ADA and the Fourteenth Amendment.

Geness subsequently amended his complaint to add a Title II and Fourteenth Amendment claim against the Commonwealth. The Commonwealth then filed a motion to dismiss based on sovereign immunity, which the District Court denied. The Commonwealth did not appeal the denial. On March 27, 2019, Geness filed a Second Amended Complaint, the operative complaint, alleging Title II and Fourteenth

5

Amendment violations against three state defendants—the Commonwealth, as well as AOPC and DHS.

AOPC moved to dismiss based on sovereign immunity, and the District Court denied its motion. AOPC timely appealed, and the District Court's denial of AOPC's motion to dismiss is now before us. This appeal does not involve Geness's claims against the Commonwealth or DHS; AOPC is the only appellant.

## II. STANDARD OF REVIEW[3]

We review de novo a motion to dismiss based on sovereign immunity. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996).[4] At the motion to dismiss stage, "we accept all well-pleaded allegations in the Complaint as true and draw all reasonable inferences in favor of the non-moving part[y]." *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 340, 342 (3d Cir. 2003). To survive a motion to dismiss, factual allegations "must be enough to raise a right to relief above the speculative level," which "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. DISCUSSION

---

[3] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and we exercise jurisdiction under 28 U.S.C. § 1291.

[4] Geness filed a motion for leave to file a supplemental appendix that contains materials that were not before the District Court. At this stage of the litigation, we are

6

The Eleventh Amendment renders States immune from any lawsuit "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While the Amendment's terms only apply to suits brought by citizens of another state, the Supreme Court has "repeatedly held that this immunity also applies to unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). This immunity further extends to "entities that are considered arms of the state."[5] *Bowers v. NCAA*, 475 F.3d 524, 545 (3d Cir. 2007) (citing *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997)).

Congress has the power to abrogate states' Eleventh Amendment immunity, thus permitting suits to proceed for specific claims, when it "unequivocally" expresses an intent to do so and validly exercises this power within the bounds of its authority under § 5 of the Fourteenth Amendment. *Id.* at 550. "When Congress seeks to remedy or prevent unconstitutional discrimination, § 5 authorizes it to enact prophylactic legislation proscribing practices that are discriminatory in effect, if not in intent, to carry out the basic objectives of the

---

constrained to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and there is presently no reason to depart from this rule. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). We therefore deny Geness's motion, which would improperly expand the record on appeal.

[5] It is undisputed that AOPC is an "arm of the Commonwealth." Appellant's Br. 17.

7

Equal Protection Clause." *Id.* at 551 (quoting *Lane,* 541 U.S. at 520).

Congress unequivocally expressed its intent to abrogate sovereign immunity for claims brought under Title II of the ADA. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (quoting 42 U.S.C. § 12202, which states that "a State shall not be immune under the eleventh amendment to the Constitution of the United States from an action . . . for a violation of this chapter."). The Title's purpose, in part, is "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4); *see also Bowers*, 475 F.3d at 550 (acknowledging Congress's clear intent to abrogate sovereign immunity for Title II claims).

While Congress "must have a wide berth in devising appropriate remedial and preventative measures" under § 5 of the Fourteenth Amendment, its power is not "unlimited." *Lane*, 541 U.S. at 519. The Supreme Court in *Lane* held that Congress validly abrogated state sovereign immunity for claims brought under Title II "as it applies to the class of cases implicating the fundamental right of access to the courts." *Id.* at 533–34. That claim was brought by paraplegic individuals, one of whom was required to appear in a second-floor courtroom in a building with no elevator. *Id.* at 513. He crawled up the stairs of the courthouse to attend his first court appearance. *Id.* For his second appearance, he refused to crawl or be carried by officers. *Id.* He was "consequently arrested and jailed for failure to appear." *Id.* The Court reiterated the principle that "within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard." *Id.* at 532 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379

8

(1971)).  But it limited its holding to Title II lawsuits that implicate "accessibility of judicial services," deliberately leaving unanswered whether Congress validly abrogated sovereign immunity for "Title II's other applications," for example, "failing to provide reasonable access to hockey rinks, or even to voting booths."  *Id.* at 530–31.

Subsequently, in *Georgia*, the Court made clear that courts analyzing whether Congress validly abrogated sovereign immunity for a Title II claim against a state or state entity must conduct a "claim-by-claim" analysis.  546 U.S. at 159.  It accordingly established a three-part test for courts to determine whether sovereign immunity has been abrogated in a particular case: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  *Id.*

Here, we must apply this three-part test to determine whether Congress validly abrogated sovereign immunity for Geness's claim against AOPC (and thus whether the claim may proceed).  Before we apply *Georgia*, we will first examine the extent to which our Court's prior precedential opinion in this matter is controlling here, and we will examine the District Court's decision on remand.  Pursuant to *Georgia*, we will reverse the District Court's judgment and hold that AOPC retains its sovereign immunity because Geness has not stated a Title II claim against it.

9

## A. Our Court's Prior Precedential Opinion

On August 28, 2018, our Court, *inter alia*, reversed the District Court's denial of Geness's motion for leave to amend his complaint to add the Commonwealth as a defendant. We remanded the case for amendment of the Complaint and reinstitution of his Title II and Fourteenth Amendment claim.

In addressing whether the District Court should have permitted Geness to amend his Complaint, we analyzed whether his proposed Title II and Fourteenth Amendment claim against the Commonwealth would be futile, thus applying the same standard as a motion to dismiss (as we do here).[6] We held that Geness's proposed claim was not futile and should be permitted. In the course of the analysis, we addressed each requirement of a Title II claim:

> To state a claim under Title II of the ADA, Geness must establish: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to

---

[6] "The standard for assessing futility is the 'same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir.2000)).

discrimination by any such entity; (4) by reason of his disability."

*Geness*, 902 F.3d at 361 (quoting *Haberle v. Troxell*, 885 F.3d 171, 178–79 (3d Cir. 2018) and citing 42 U.S.C. § 12132).

We found that Geness met all four requirements of a cognizable Title II claim against the Commonwealth. Specifically, we noted that

> [r]egulations promulgated under the ADA require that the Commonwealth "*shall* ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals," 28 C.F.R. § 35.152(b)(2) (emphasis added), and "[s]hall not place inmates or detainees with disabilities in inappropriate security classifications because no accessible cells or beds are available," *id.* § 35.152(b)(2)(i).

*Id.* at 361–62 (discussing several procedural protections "designed to avoid undue delays and safeguard the fair and efficient functioning of the criminal justice system," the denial of which gives rise to a cognizable ADA claim).

With respect to the Title II claim, we concluded that "[a]s alleged, these multiple, protracted, and inexcusable delays in the handling of Geness's examinations, transfers, and motions—resulting in nearly a decade of imprisonment and

11

civil commitment before a hearing was finally held on his habeas petition—are more than sufficient to state a claim under the ADA." *Id.* at 362.

We went on to find that the same circumstances gave rise to a claim under the Fourteenth Amendment:

> [T]he constitutional claims Geness seeks to bring against the Commonwealth as to both the length of his pretrial imprisonment and the length of his civil commitment would not be futile. After his first psychological evaluation indicated that he "remain[s] incompetent to stand trial," . . . Geness was incarcerated for an additional three years before civil commitment proceedings and a second examination were even *requested*. And once institutionalized, Geness was left to languish for another four years before he was granted a hearing on his habeas petition and the charges against him were dismissed. There is no question this exceeded the "reasonable period of time necessary" under *Jackson* to ascertain whether there was a substantial probability Geness would attain competency in the foreseeable future.

12

*Id.* at 363–64 (citation omitted).

When we published this opinion, however, AOPC was neither a party nor a contemplated party. Thus, it is our task to square our prior holding that Geness stated a Title II and Fourteenth Amendment claim against the *Commonwealth* with Geness's pleadings against *AOPC*.[7]

## B. District Court on Remand

The District Court held that Geness sufficiently pleaded a Title II and Fourteenth Amendment claim against AOPC and that AOPC's sovereign immunity was validly abrogated (*i.e.*, that Geness's claim could proceed). It stated that "[a]t this preliminary stage and mindful Mr. Geness is not challenging judicial decision making but rather failures in court administration practices[,]" it would not dismiss his claim. *Geness v. Commonwealth*, 388 F. Supp. 3d 530, 534 (W.D. Pa. May 28, 2019). And it noted that discovery may help clarify "the potential liability and damages among allegedly responsible state actors [AOPC, DHS, and the Commonwealth]." *Id.* ("AOPC's argument of no involvement, or the more central involvement of the Department of Human Services, is based on facts requiring discovery on relative culpability.").

---

[7] The law of the case doctrine instructs that "one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case." *In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998). We are thus bound by our prior opinion to the extent it bears upon the matter before us.

In reaching this conclusion, the District Court found convincing Geness's general allegation that "AOPC is responsible for '[e]nsuring accessible and safe courts for all citizens' by '[e]nsuring that the courts of the Commonwealth comply with Title II.'" *Id.* at 534 (quoting Second Am. Compl. ¶ 7 (App. 36 ¶ 7)). It also noted the following more specific allegations from his Second Amended Complaint: Geness alleged that AOPC "makes regular inquiries of each county's ADA coordinator with regard to cases involving criminal defendants who are pretrial detainees whose cases have not been called to trial in a timely fashion," App. 45 ¶ 66, and that even though "AOPC repeatedly contacted the Fayette County court administrator directly to inquire about the Plaintiff's case and the reasons for [his] extended incarceration without trial," App. 45 ¶ 67, AOPC failed to take "any action designed to provide the Plaintiff with his right to be brought to trial on the charges that he faced," App. 45 ¶ 67. Further, Geness alleged that the Fayette County Court administrator, who serves as the ADA coordinator for Fayette County, received a daily list of prisoners that showed their length of incarceration—and that his name appeared on this list.

The District Court also focused on AOPC's duties pursuant to the Pennsylvania Rules of Judicial Administration. These rules task AOPC with (1) "review[ing] the operation and efficiency of the system and of all offices related to and serving the system and, when necessary . . . report[ing] to the Supreme Court or the Judicial Council with respect thereto," (2) "examin[ing] the state of the dockets and practices and procedures of the courts and of the magisterial district judges and mak[ing] recommendations for the expedition of litigation," and (3) "prepar[ing] educational and training materials for system and related personnel and to conduct

14

educational and training sessions." *Geness*, 388 F. Supp. 3d at 534 (quoting Pa.R.J.A. Nos. 505(1), (6), (12) (alterations in original)).

Considering all of this, the District Court concluded that "Mr. Geness plausibly pleads the AOPC could have helped him by exercising its duty to monitor the status of dockets and make recommendations to expedite litigation, ensure ADA compliance at a systemic level in the courts of the Commonwealth, and reporting to the Pennsylvania Supreme Court." *Id.* The District Court did not, however, explain how or at what point AOPC could or should have exercised these duties, given Geness's acknowledgement that AOPC "repeatedly contacted the Fayette County Court administrator directly to inquire about the Plaintiff's case and the reasons for the Plaintiff's extended incarceration without trial," App. 45 ¶ 67, and that Geness "is not challenging judicial decision making," *Geness*, 388 F. Supp. 3d at 532.

In summary, the District Court found that Geness had stated a viable Title II and Fourteenth Amendment claim because AOPC allegedly failed to take unspecified action to expedite his case and failed to take initiative to report the status of his case to the Pennsylvania Supreme Court. The District Court thus concluded that it could not rule out AOPC's Title II and Fourteenth Amendment liability as a matter of law and that AOPC therefore was not immune from suit.[8]

---

[8] The District Court also addressed whether AOPC possessed quasi-judicial immunity and found that it did not. *Id.* at 536–38. AOPC does not appeal this ruling.

15

**C.** *Georgia* **Analysis**

To determine whether Congress validly abrogated sovereign immunity for Geness's Title II and Fourteenth Amendment claim against AOPC, we must apply the three-part *Georgia* test.[9] The District Court, without explicitly noting that it was applying *Georgia*, concluded that the first and second inquiries were satisfied, thus permitting the claim against AOPC to proceed. Pursuant to the analysis below, we disagree with the District Court and conclude that Geness has failed to satisfy the first requirement of *Georgia* because he failed to set forth a plausible claim that AOPC violated Title II. Because Geness's allegations fail to satisfy *Georgia*'s first requirement, we need not address the second and third requirements.

To state a claim under Title II of the ADA, in satisfaction of the first *Georgia* requirement, a party must sufficiently plead that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."[10] *Geness*, 902 F.3d at

---

[9] As noted above, this test requires courts to examine "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159.

[10] It is undisputed that AOPC is a "public entity." *See* 42 U.S.C. § 1231(1)(B) (stating that public entities include

16

361 (quoting *Haberle*, 885 F.3d at 178–79); 42 U.S.C. § 12132.[11]  In our prior precedential opinion, we concluded that the first and second requirements were satisfied, as well as the third and fourth requirements as they relate to the Commonwealth.  *Id.* at 361–62.  We must now determine whether *AOPC* denied Geness "the benefits of [its] services, programs, or activities . . . by reason of his disability."  *Id.*

The following are Geness's allegations regarding AOPC, drawn directly from his Second Amended Complaint:[12]

---

"any department, agency, special purpose district, or other instrumentality of a State or States or local government").

[11]  A plaintiff seeking compensatory damages under the ADA must also sufficiently allege that the public entity intentionally discriminated against him or her.  *Haberle*, 885 F.3d at 181.  To satisfy this element of intentional discrimination, a plaintiff must allege at least "deliberate indifference," which requires "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge."  *Id.* (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013)) (alteration in original); *see also Geness*, 902 F.3d at 362 n.13.  We will not address deliberate indifference here because we hold that Geness's allegations fail to satisfy Title II's other requirements.

[12]  Geness's Second Amended Complaint also links AOPC's alleged wrongdoing to the conduct of judges in their disposition of his case.  *See, e.g.*, App. 43 ¶ 52 ("The above-described Judges continued to permit Plaintiff's case to be listed for trial, despite their actual knowledge of his

17

- "Defendant AOPC is a subsidiary unit of the Commonwealth of Pennsylvania and as such acts as an agent of the Commonwealth in various matters related to supervision and administration of the Pennsylvania Unified Judicial System. The Pennsylvania Unified Judicial System includes judges of the Court of Common Pleas of the various Pennsylvania counties, including Fayette County. In its capacity as a subsidiary unit of the Commonwealth, AOPC administers the Pennsylvania Unified Judicial System and is responsible for the prompt and proper disposition of all business of the courts of the Commonwealth of

---

incompetency."). Allegations of wrongdoing based on judicial conduct are omitted here because AOPC's administrative functions and the independent role of the judiciary must not be conflated. *See Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) ("The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages."). The parties do not present and we are not aware of any legal authority that would permit AOPC to be found liable based on judicial conduct. Further, Geness acknowledges that AOPC cannot be held liable based on judges' decision-making. Appellee's Br. 25 ("The AOPC does not have oversight over criminal cases and the decisions that are required in each such case to the extent that those are duties to be performed by the Judges of the Common Pleas Court. . . . AOPC does in fact have the duty to oversee the actions of those Judges to ensure that, among other things, the courts comply with the rights of disabled individuals.").

Pennsylvania. Among the duties and responsibilities of the AOPC is insuring accessible and safe courts for all citizens. The duties of the AOPC include insuring that the courts of the Commonwealth comply with Title II of the [ADA]. The AOPC attempts to insure compliance with the ADA through interaction with ADA coordinators in each county of the Commonwealth. For Fayette County, Pennsylvania, the role of AOPC ADA coordinator is filled by the deputy court administrator, who reports directly to the court administrator." App. 36 ¶ 7.

- "AOPC, through the Fayette County Court of Common Pleas . . . discriminated against [him] because of his disability by depriving him of the administration of judicial services and the normal benefits of criminal procedure and due process of the law." App. 44 ¶ 61.

- "As part of its effort to fulfill its responsibility to insure the Commonwealth's compliance with the ADA, Defendant AOPC makes regular inquires of each county's ADA coordinator with regard to cases involving criminal defendants who are pretrial detainees whose cases have not been called to trial in a timely fashion according to Pennsylvania law." App. 45 ¶ 66.

- "Defendant AOPC repeatedly contacted the Fayette County court administrator directly to inquire about the Plaintiff's case and the reasons for the Plaintiff's extended incarceration without trial. Notwithstanding that those inquiries were made by Defendant AOPC, neither the AOPC, nor any other agent of AOPC,

19

including the AOPC's local ADA coordinator in Fayette County, took any action designed to provide the Plaintiff with his right to be brought to trial on the charges he faced." App. 45 ¶ 67.

- "During the period of Plaintiff's incarceration, the Fayette County ADA coordinator was the assistant court administrator. At all times relevant to this case, the assistant court administrator reported directly to the court administrator." App. 45 ¶ 68.

- "During the period of Plaintiff's incarceration . . . , the Fayette County court administrator received from the Fayette County Prison a daily list of prisoners incarcerated in the Fayette County Prison. This list included various information about each incarcerated individual, including the date that the individual was incarcerated, as well as the minimum and maximum incarceration dates for each prisoner." App. 45–46 ¶ 69.

- "On each of the daily lists sent from the prison to the court administrator, Plaintiff Craig Geness appeared together with information about his incarceration described above." App. 46 ¶ 70.

- The AOPC's conduct, described above, "deprived [Geness] of his right to the justice system, which is protected by the Fourteenth Amendment of the United States Constitution." App. 47 ¶ 82.

Identifying AOPC's "services, programs, or activities" at the foundation of Geness's Title II claim is a necessary first step to determining whether his claim is cognizable. *See*

20

*Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301–03 (3d Cir. 2015). "[T]he phrase 'service, program, or activity' under Title II . . . is 'extremely broad in scope and includes anything a public entity does.'" *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019) (quoting *Disability Rights*, 796 F.3d at 301).

In *Disability Rights*, this Court identified the alleged "service, program, or activity" as a judicial hearing before a mentally ill person can be forcibly medicated in a nonemergent situation. *Id.* at 303–04, 307 (holding that "judicial process before the nonemergent administration of psychotropic drugs is *not* a 'service, program, or activity' of New Jersey from which the civilly committed are excluded). In *Furgess*, this Court concluded that a prison's "provision of a shower is a service, program, or activity." 933 F.3d at 291 (holding that Furgess adequately alleged a Title II claim based on the prison's failure to accommodate his need for a shower). In *Bowers*, the University of Iowa's program was its provision of athletic scholarships. 475 F.3d at 553 (holding that Bowers stated a claim under Title II).

Based on Geness's Second Amended Complaint and his arguments before this Court, and because Geness concedes that AOPC's liability cannot be premised on judicial decision-making, *see supra* note 12, the only "services, programs, or activities" at issue are AOPC's administrative duties to (1) "intervene directly with the Fayette County Court to ensure that the Plaintiff's case moved forward," and (2) "seek intervention for such result by the Pennsylvania Supreme Court." Appellee's Br. 22. Geness argues that Title II requires AOPC to provide him these two services from which he was

21

excluded based on his disability.[13]  AOPC counters that its "enumerated powers" do not authorize it to meddle in "specific litigation."  Appellant's Br. 33.

First, regarding AOPC's alleged failure to directly intervene with the Fayette County Court of Common Pleas, Geness acknowledged in his Second Amended Complaint that AOPC "repeatedly" made inquiries about the length of his detention to the court administrator.  App. 45 ¶¶ 66–67.  But, he alleged, AOPC failed to take "any action" beyond those inquiries that would "provide [him] with his right to be brought to trial."  App. 45 ¶ 67.  He neither identifies in his Complaint nor argues before us what further action AOPC should have or could have taken.  And it is difficult to imagine what action it could have taken in light of Geness's concession that AOPC is not liable for judges' decision-making in individual cases.  *See supra* note 12.  Thus, Geness's allegation of AOPC's failure to directly intervene with the county court in some unspecified manner, beyond its repeated inquiries to the court administrator, cannot sustain his claim under Title II of the ADA.  *See Twombly*, 550 U.S. at 555 (stating that allegations must be more than "speculative" or "conclusory").

----

[13]  To the extent Geness additionally alleges that AOPC had a duty to ensure his motions for habeas corpus relief and motions to dismiss the charge against him were heard and ruled upon in a timely manner, we conclude that these allegations are both dependent on judicial conduct and too speculative to sustain his claim because they are not linked to any alleged service, program, or activity of AOPC under Pennsylvania Rule of Judicial Administration 505 or otherwise.  *See supra* note 12; *Twombly*, 550 U.S. at 555.

22

This leaves only Geness's argument that AOPC failed to seek intervention from the Pennsylvania Supreme Court. He does not make this allegation anywhere in his Second Amended Complaint. It stems from AOPC's "powers and duties" enumerated in the Pennsylvania Rules of Judicial Administration. Pa.R.J.A. No. 505. We will take judicial notice of the Pennsylvania Rules of Judicial Administration, as they are "matters of public record," which the District Court considered as well. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). AOPC's duties include, in relevant part:

> (1) To review the operation and efficiency of the system and of all offices related to and serving the system and, when necessary, to report to the Supreme Court or the Judicial Council with respect thereto. . . .

> (6) To examine the state of the dockets and practices and procedures of the courts and of the district justices of the peace and make recommendations for the expedition of litigation.

Pa.R.J.A. No. 505(1), (6).

The "service, program, or activity" requirement under Title II is "extremely broad in scope and includes anything a public entity does." *Furgess*, 933 F.3d at 289 (finding that "a prison's provision of showers to inmates fits within this

23

expansive definition"). Nonetheless, the "service, program, or activity" must be one that the entity actually provides. *See, e.g.*, *Lane*, 541 U.S. at 531 (holding that access to court proceedings is a service provided by the state). This is an obvious but important limitation. For example, in *Disability Rights*, we held that "the provision of judicial process before the [forcible] nonemergent administration of psychotropic drugs is not a 'service, program, or activity' of New Jersey from which the civilly committed are excluded." 796 F.3d at 305, 307 (stating that this was not a "public service, program, or activity to which nondisabled individuals have access").

Our dissenting colleague cites Pa.R.J.A. No. 505(1), (6) as the basis of his opinion that Geness has stated a viable Title II claim against AOPC. These provisions, however, do not suffice to establish a Title II claim against AOPC. They charge AOPC with "review[ing] the operation and efficiency of the system" and reporting to the Supreme Court "when necessary"—and with "examin[ing] the state of the dockets and practices and procedures of the courts . . . and mak[ing] recommendations for the expedition of litigation." Pa.R.J.A. No. 505(1), (6). These rules unambiguously require AOPC to facilitate an "efficien[t]" and "expeditio[us]" system, in line with its role as an administrative body. They do not task AOPC with policing potential civil rights violations in particular cases—to do so would task the AOPC with making legal determinations and recommendations. The AOPC is not, and should not be, a judicial back-seat driver. *See supra* note 12.

Geness argues that AOPC's failure to "seek intervention by the Pennsylvania Supreme Court" impacted his ability to be "timely [tried] on the charges that he faced." Appellee's Br. 11. This argument requires some unpacking. First, he was never competent to stand trial throughout his years of

24

detainment—and subjecting him to trial would have violated his due process rights. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) ("We have repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process." (internal quotation marks omitted)). Secondly, Geness neither alleges nor attempts to argue that AOPC had any control over whether he was housed in a prison versus a long-term care facility while deemed incompetent. Thus, with his argument properly distilled, Geness is effectively urging this Court to hold that AOPC had a duty to seek intervention of the Pennsylvania Supreme Court to have his case dismissed before it languished for nine years while he remained incompetent and—for reasons both unclear and inexcusable—remained imprisoned for much of that time. He makes this argument despite acknowledging that he had representation and access to the court throughout the years he was imprisoned and civilly committed. *See* App. 40 ¶¶ 30–31 (stating that Geness's public defender "made no attempt to have [his] case removed from the trial list, despite [his] known incompetency to stand trial" and despite having "the authority and the opportunity to intervene with the Court"); App. 40 ¶¶ 26–27 (stating that Geness's case was subject to the court's "call of the list," whereby his counsel, a district attorney, and a judge evaluated the status of his case on a monthly basis).

By Geness's argument, in order for AOPC to comply with Title II, it had to suggest to the Pennsylvania Supreme Court that his case be dismissed because he was not competent to stand trial. AOPC would "in effect . . . be required to closely monitor, deeply evaluate, and consider intervening in every criminal case pending in the Commonwealth." Appellant's Reply 1. In a case such as this, AOPC argues, "even if aware of the procedural status," it "would not have known whether

25

the extended delay was part of a strategic course by defense counsel, the thoughtful deliberative process of the judge, or some other factor peculiar to that specific case." Appellant's Br. 41. We find AOPC's arguments persuasive.

Further, AOPC's powers do not allow it to actually hold a criminal trial, which Geness alleges it denied him. Appellee's Br. 15, 25, 26 n.22. Even had AOPC reported to the Pennsylvania Supreme Court or the Fayette County Court of Common Pleas about the delay in Geness's case, it remained the exclusive power of the courts to actually do something about it.

Relatedly, since Geness was not competent to stand trial, a court's decision regarding whether a case should be dismissed depends on the evidence and law underlying the charge and the basis for dismissal. Weighing such matters is indisputably a judicial function. This brings us full circle to Geness's acknowledgement that AOPC does not have a duty to meddle with judicial decision-making. *See supra* note 12. Because judicial decision-making is not a service AOPC provides to either disabled or nondisabled individuals, Geness was not excluded from this service based on his disability. *See Disability Rights*, 769 F.3d at 305.

Further, Title II requires not only that a public entity "excluded" a disabled individual from a service it provides but also that such an exclusion was "by reason of his disability." *Geness*, 902 F.3d at 361 (quoting *Haberle v. Troxell*, 885 F.3d 171, 178–79 (3d Cir. 2018) and citing 42 U.S.C. § 12132). Neither Geness nor the dissent sets forth a plausible allegation or argument regarding how AOPC neglected to report the delay in his case to the Pennsylvania Supreme Court "by reason of his disability." *Id.* While his case appears to have languished

26

due to his disability (*i.e.*, while he was incompetent to stand trial), AOPC had no power over the disposition of his case, and there is simply no allegation or argument before us regarding how AOPC's alleged failure to contact the Supreme Court connects to Geness's disability.

For the reasons set forth above, Geness's allegations against AOPC fail to satisfy the first requirement of *Georgia*—setting forth a plausible Title II claim. We therefore hold that Congress has not validly abrogated AOPC's sovereign immunity regarding this particular claim. In conclusion, we will reverse the District Court's judgment and remand this case for dismissal of the claim against AOPC. Though we exclude AOPC as a potentially responsible party, the human suffering endured by Geness due to the mishandling of his case cannot be overstated. This opinion does not impact Geness's claims against the Commonwealth and DHS, which are not currently before us.

27

Craig Geness v. Administrative Office of Pa., et al
No. 19-2253

---

AMBRO, <u>Circuit Judge</u>, dissenting

The blink response to a suit against a clerk's office is that this cannot be. It is simply counterintuitive. Thus I easily understand why my colleagues believe it correct to reverse Judge Kearney's decision. *See Geness v. Pennsylvania*, 388 F. Supp. 3d 530 (W.D. Pa. 2019) (emphasis omitted). But at the motion-to-dismiss stage in this Les Misérables scenario, I am persuaded by his well-reasoned analysis. Thus I would affirm and hold that Craig Geness has pled facts sufficient to abrogate the sovereign immunity of the Administrative Office of Pennsylvania Courts ("AOPC") for purposes of his claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., and the Fourteenth Amendment.

The majority opinion recites well the tragic facts in this case. Mr. Geness languished in custody without a trial for over nine years before the case against him was dropped because he would never be competent to stand trial and substantial evidentiary issues impaired the Commonwealth's prosecution. This came after it was determined early on that he was incompetent and unlikely to improve, and while four separate motions for habeas corpus relief and motions to dismiss were pending (without a hearing or ruling on any of them). To say that Mr. Geness suffered a grave injustice at the hands of the system for justice is inadequate. There are no words.

My colleagues in the majority conclude that Mr. Geness has failed to satisfy the first requirement of the three-prong test

outlined in *United States v. Georgia*, 546 U.S. 151 (2006). They hold that he did not state a plausible Title II claim because he did not allege that the AOPC denied him "the benefits of [its] services, programs, or activities . . . by reason of his disability." *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 178–79 (3d Cir. 2018), and citing 42 U.S.C. § 12132).

In my view, Mr. Geness clearly identifies the provisions of Pennsylvania law that tasked the AOPC with monitoring the criminal docket and reporting failures directly to the Commonwealth's Supreme Court. And he alleges that the AOPC's failure to perform those tasks substantially, if not exclusively, led to his unconscionable and lengthy pretrial detention. I rely on the same law and portions of Mr. Geness's Second Amended Complaint as my colleagues to reach this opposite conclusion.

Sections (1) and (6) of Rule 505 of the Pennsylvania Rules of Judicial Administration ("Pa. R.J.A.") charge the AOPC with "review[ing] the operation and efficiency of the system and of all offices related to and serving the system and, when necessary . . . [,] report[ing] to the [Commonwealth] Supreme Court or the Judicial Council with respect thereto," Pa. R.J.A. No. 505(1), and "examin[ing] the state of the dockets and practices and procedures of the courts and of the magisterial district judges and mak[ing] recommendations for the expedition of litigation," *id.* No. 505(6).

Mr. Geness alleges that the AOPC "makes regular inquiries of each county's ADA coordinator with regard to cases involving criminal defendants who are pretrial detainees whose cases have not been called to trial in a timely fashion,"

2

App. 45 ¶ 66, and that it in fact "repeatedly contacted the Fayette County court administrator directly to inquire about [Mr. Geness's] case and the reasons for the . . . extended incarceration without trial," App. 45 ¶ 67. It, however, took no further action "designed to provide [him] with his right to be brought to trial on the charges that he faced." *Id.* Additionally, he alleges that during his incarceration "the Fayette County court administrator received . . . a daily list of prisoners incarcerated in the Fayette County Prison . . . , including the date that [each] individual was incarcerated, as well as the minimum and maximum incarceration dates for each . . . ." App. 45–46 ¶ 69. Mr. Geness appeared on each list. App. 46 ¶ 70.

Based on the directives in the Pennsylvania Rules of Judicial Administration and Mr. Geness's allegations that the AOPC failed to provide him the services of monitoring the docket and reporting the delay in his case to the Commonwealth Supreme Court directly, he has plausibly pled a claim based on Title II of the ADA. "[T]he phrase service, program, or activity under Title II . . . is extremely broad in scope and includes anything a public entity does." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019) (citation and internal quotation marks omitted). My colleagues do not explain why monitoring the criminal dockets and reporting issues up to the Supreme Court does not satisfy this definition of "service," nor why they discount Mr. Geness's allegations that he was denied the service of having the AOPC flag the extreme delay in his case directly to that Supreme Court.

Mr. Geness does not propose that the AOPC had to guarantee specific results, or dictate to Commonwealth judges how to rule in any particular case, or grant him any form of

3

judicial relief. He asserts that the AOPC had the duty to monitor the state of the dockets, which it did, and seek intervention by the Supreme Court, which it failed to do. Neither the AOPC nor my colleagues cite to any case or provision of law that would have barred the AOPC from fulfilling its obligations under the Pennsylvania Rules of Judicial Administration. Rule 505 provides the basis for the AOPC to ring the alarm in cases like the one before us. And to say that it had an obligation to make a recommendation to expedite litigation where there was a nearly decade delay is not the same as arguing that the AOPC has an obligation to intervene in every pending criminal case. There was nothing ordinary about the procedural posture of this case.[1]

---

[1] My colleagues also conclude that Mr. Geness failed to allege that the AOPC intentionally discriminated against him "by reason of his disability," as is required to state an ADA claim. *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (quoting *Haberle*, 885 F.3d at 178–79 and citing 42 U.S.C. § 12132). They acknowledge that the element of intentional discrimination is met when a plaintiff alleges "deliberate indifference," which requires "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." *Haberle*, 885 F.3d at 181 (citation omitted). But they do not explain how it is that Mr. Geness did not sufficiently plead knowledge by the AOPC that his rights were being violated when he in fact alleges that during the period of his incarceration the court administrator received a daily list of prisoners that included his name, the duration of his incarceration, and the status of his case, App. 45–46, and that the AOPC repeatedly inquired about the status of his case, App. 45. Nor do they explain why Mr. Geness did not sufficiently plead failure to act when he does allege that the

4

Any concern about whether the AOPC actually had the ability to take further action on behalf of Mr. Geness is a matter for discovery. As the District Court pointed out, "a developed factual record may show, as a matter of fact, the AOPC could not have done more." *Geness*, 388 F. Supp. 3d at 535. But how can we say at this stage that the AOPC does not in fact have mechanisms and procedures in place to ensure that cases like the one before us do not slip through the cracks? How can we say that it did not, in the past, alert up the chain on behalf of other criminal defendants but failed to do so in Mr. Geness's case?

---

AOPC, despite knowledge of the delay in his case, failed to intervene with the Supreme Court on his behalf as it was authorized to do under Pennsylvania's Rules of Judicial Administration. *Id.*

The argument that the AOPC had no power over the disposition of Mr. Geness's case, and thus did not cause the delay, misses the point. Under our case law, a successful ADA claim only requires the plaintiff to show but-for causation. *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013). Mr. Geness does not have to allege or ultimately prove that the AOPC alone caused the rights violation he suffered. *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 291 n.25 (3d Cir. 2019). At the pleading stage, he has more than sufficiently alleged that the AOPC's failure to act on his behalf substantially caused and contributed to the delay in his case. And what ultimately transpired internally at the AOPC with respect to Mr. Geness's case is something he should have the opportunity to determine through discovery. That, however, remains a mystery, as we now cut short his case against that agency.

5

We are to construe complaints so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (quoting Fed. R. Civ. P. 8(f)). Mr. Geness's allegations more than suffice at this stage, and given the harrowing ordeal he endured at the hands of the judicial system, it would be a further injustice not to allow his suit against the AOPC (the very agency with the duty to monitor the dockets and report up any issues) to continue. To do otherwise is to define adequacy down. I respectfully dissent.